UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MALIKA KAHN. <br><br> Plaintiff, <br> v. <br><br> MICHAEL J. ASTRUE, Commissioner, Social Security Administration, <br><br> Defendant. | Case No.: 09-CV-3731-LHK <br><br> ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING TO SOCIAL SECURITY ADMINISTRATION <br><br> (re: docket #9 and #10) |

Plaintiff Malika Khan ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain review of the Social Security Administration Commissioner's final decision denying her claim for disability benefits. Plaintiff seeks an order reversing the final decision of the Commissioner and awarding benefits, or alternatively remanding for further proceedings before a new Administrative Law Judge. Presently before the Court are the parties' cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court denies both motions for summary judgment, grants Plaintiff's motion for remand, and denies Plaintiff's request for a new Administrative Law Judge.

1

# I. BACKGROUND

## A. Procedural History

On September 22, 2006, Plaintiff filed for disability insurance benefits based on visual impairment, alleging an onset date of disability of July 30, 2006. Administrative Transcript ("Tr.") 12. Following the application's initial denial on November 7, 2006 and subsequent denial on reconsideration on July 5, 2007, the Administrative Law Judge ("ALJ") held a hearing on September 4, 2008 and found Plaintiff not disabled. *Id.* The Social Security Appeals Council denied Plaintiff's request for review on June 16, 2009. Tr. 1. Plaintiff filed the operative Complaint requesting judicial review on August 14, 2009.

## B. Plaintiff's Age and Educational, Vocational, and Medical History

Plaintiff was born on July 1, 1948, and was 58 years old on the alleged disability onset date. Tr. 19. Pursuant to the Social Security Administration's disability regulations, Plaintiff is an individual of "advanced age" for purposes of disability determination. 20 C.F.R. § 404.1563(e). Plaintiff obtained a Bachelor's degree in chemistry from a university in Madras, India, and then came to the United States and obtained a degree licensing her as a medical technologist. Tr. 33.

For the next 25 years, Plaintiff worked as a clinical laboratory scientist. Tr. 33-34, 114. The position required her to read instrument printouts and use a microscope. Tr. 151-57. Starting in 2005, her employer warned her several times about the mistakes she was making on the job. *Id.* Plaintiff had overlooked critical values on instrument printouts and had made reports of incorrect cell counts. *Id.* Plaintiff testified that these mistakes were due to her worsening eyesight. Tr. 39. Eventually, the hospital terminated her on the basis of continued mistakes. Tr. 156-57.

Plaintiff underwent a series of vision examinations in the year of her disability claim. Various treating doctors assessed her with decreased visual acuity in each eye of 20/50 or worse. Tr. 164-72, 191-94, 201-04, 217-22. One of her treating doctors, Dr. Boldfrey, noted Plaintiff's

2

Case No.: 09-CV-3731-LHK
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING TO SOCIAL SECURITY ADMINISTRATION

inability to do fine visual work, finding that she had central macular dystrophy and Stargardt disease, a permanent condition.  Tr. 217.  Another treating doctor, Dr. Maher, concurred with this prognosis and recommended environmental restrictions, noting that Plaintiff's Stargardt disease and macular degeneration "truly limits her ability to do office tasks."  Tr. 218, 236-37.

Other treating doctors assessed Plaintiff with multiple cardiac risk factors, hypertension, diabetes, and dyslipidemia; however, these diagnoses were treated by medication.  Tr. 245-54.  Another treating doctor, Dr. Chaudhary, noted that despite some health concerns, Plaintiff exercised on a daily basis and did not report any issues during or after exercise.  Tr. 256.  Finally, at the hearing before the ALJ and in disability reports, Plaintiff testified to arthritis problems in her hands, feet, knees, and legs.  *See, e.g.*, Tr. 42, 50-51, 136-38, 145.

## II. LEGAL STANDARDS

### A.  Standard for Reviewing the ALJ Decision

The Court has authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g).  The Court may only disturb the ALJ decision if it is unsupported by substantial evidence in the record as a whole or if it is not an application of the proper legal standard.  42 U.S.C. § 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's conclusion.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### B.  Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). "The claimant carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves a prima facie case of disability, showing that (1) she is not presently engaged in a gainful activity, (2) that her disability is severe, and (3) that she cannot perform work she has done in the past, then the Commissioner has the burden of establishing that she can perform "a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 404.1520.

1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

4

Case No.: 09-CV-3731-LHK
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING TO SOCIAL SECURITY ADMINISTRATION

4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. The Commissioner must show that the claimant can perform some substantial gainful work in the national economy, considering a claimant's age, education, and vocational background. 20 C.F.R. § 404.1520(g)(1).

### III. ANALYSIS

The dispute here is over steps four and five of the ALJ's evaluation process, namely the ALJ's determination of Plaintiff's residual functional capacity and the ALJ's application of the Medical Vocational Guidelines based on this determination.

**A. ALJ's Finding of Residual Functional Capacity ("RFC")**

The ALJ found that Plaintiff "has the residual functional capacity to perform a <u>full range of work at all exertional levels</u>." Tr. 17 (emphasis added). In making this finding, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 17. Given the scarcity of evidence related to Plaintiff's physical exertion levels, the ALJ apparently relied primarily on the Physical Residual Functional Capacity Assessment form to arrive at the "all exertional levels" conclusion. Tr. 205-09. This form, by a checked box, indicates that the physician established no exertional limitations. Tr. 206. "All exertional levels" incorporates levels such as "very heavy," including tasks such as lifting "objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567.

Substantial evidence in the record, however, points toward Plaintiff's inability to function at

5

all exertional levels.  For example, Plaintiff testified that even "regular household chores cause pain in [her] legs" and that she cannot "stand long because of arthritis."  Tr. 145.  In addition, on an exertional daily activities questionnaire, Plaintiff indicated that she has arthritis in her hands, feet, and knees and can only lift small household things occasionally.  Tr. 136-37.  At the hearing Plaintiff testified that due to her arthritic knees, she requires help cleaning her home.  Tr. 42, 50-51, 137.  Finally, one of her physicians reported "abnormal" results on a Treadmill Stress Test ("TMST") to check cardiac function.  Tr. 232.

A treating physician's opinion must be given controlling weight, or otherwise afforded deference, and cannot be discounted without specific and legitimate reasons.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007).  At the hearing, the vocational expert testified that the Plaintiff could be able to perform work at the "light level," perhaps as a motel maid or housekeeper, but qualified his testimony based on the treating doctor's assessment of various environmental restrictions on Plaintiff, stating that the Plaintiff could have difficulty with these occupations.  Tr. 47-49, 237.  And, nowhere did the vocational expert mention any higher exertional levels at which Plaintiff could function.  The ALJ did not provide reasons to discount the treating doctor's opinion on which the vocational expert based part of his testimony.  In addition, the ALJ provided no reason to discount the opinions of various treating doctors, all of whom noted various environmental restrictions on Plaintiff's ability to function.

On this record, which centers on a Plaintiff of "advanced age" with Stargardt disease, macular degeneration, abnormal cardiac function, and arthritis, the ALJ's finding that Plaintiff is capable of performing work at all exertional levels is not supported by substantial evidence in the record.  There is, however, evidence in the record that Plaintiff may be able to perform work at the "light level."  This determination should be made by the ALJ in the first instance.  Thus, the Court remands for a new determination of RFC.

6
Case No.: 09-CV-3731-LHK
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING TO SOCIAL SECURITY ADMINISTRATION

**B. ALJ's Application of the Medical Vocational Guidelines**

To meet the burden of establishing that Plaintiff could perform "a significant number of other jobs in the national economy," the ALJ may refer to the Medical Vocational Guidelines, also known as the grids. *Thomas v. Barnhart*, 278 F.3d at 955.  The grids provide a framework to determine whether a claimant is disabled based on RFC, age, education, and previous work experience.  Here, the ALJ, relying on the RFC determination found insufficient in the prior section, looked to grid rule 204.00, which applies to individuals capable of work at "all exertional levels."  Tr. 19.  In light of the Court's remand for a new determination of Plaintiff's RFC, use of another grid rule may be more appropriate.

For a "light" RFC level, both Plaintiff and the Commissioner agree on the attributes of Plaintiff's age, education, and previous work experience that place her under either Rule 202.06 or 202.08.  *See* Mot. 7: 11-12; Opp. Mot. 3: 17-19.  The difference between these two rules hinges on whether her education does or does not "provide for direct entry into skilled work."  20 C.F.R. pt. 404, subpt. P, app. 2.  To address the point of conflict, we look to wording in the following regulation describing the transferability of skills:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (<u>or you have recently completed education which provides for direct entry into skilled work</u>) that you can do despite your impairment(s).

20 C.F.R. § 404.1568(d)(4) (emphasis added).  This regulation draws attention to how recent the education was and gains further support from the idea that formal education completed many years before impairment "may no longer be useful or meaningful in terms of . . . ability to work."  20

7

C.F.R. § 404.1564(b); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(c) ("Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment . . . ."). Indeed, the wording in the grids asks whether the education "does" or "does not" provide for direct entry into skilled work, not whether the education "did" or "did not" provide for direct entry at time the education was completed.

Plaintiff graduated from college and an internship program for medical technology in 1979. Tr. 118. The impairment in this case occurred 27 years later, in 2006. Tr. 12. Based on the long period between Plaintiff's education and her impairment, and parties' agreement with the vocational expert's assessment of non-transferability of the skills gained from her education, her past education does not clearly provide her with direct entry into skilled work. *See* Mot. 7: 11-12; Opp. Mot. 3: 17-19; Tr. 46-47. Without further evidence to the contrary, this validates grid rule 202.06 as the appropriate rule to use for "light" residual functional capacity. According to this rule, Plaintiff would be disabled as a matter of law.

Thus, the determination of Plaintiff's RFC on remand is crucial to resolving Plaintiff's status under the Medical Vocational Guidelines, or grids as well.

## IV. CONCLUSION

In light of the unresolved issues remaining, the Court will not grant summary judgment to either party. Plaintiff has requested a new ALJ on remand, but has not pointed to any conduct of the ALJ (i.e., bias or mistreatment) to warrant remand to a new ALJ. Accordingly, the Court DENIES both Plaintiff's and the Commissioner's motions for summary judgment, GRANTS Plaintiff's motion for remand for further proceedings consistent with this Order, and DENIES Plaintiff's request for assignment to a new ALJ.

**IT IS SO ORDERED.**

Dated: September 20, 2010

_____
LUCY H. KOH
United States District Judge